

Signed/Docketed
May 21, 2013

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 12-18655 MER |
| MICHAEL EMIL FASSI ) | |
| TERRI LYNN FASSI ) | Chapter 13 |
| ) | |
| Debtors. ) | |

## ORDER

THIS MATTER comes before the Court on the limited issue of whether debtors Michael E. Fassi and Terri L. Fassi (collectively, the "Debtors") are "stockbrokers" as defined in 11 U.S.C. § 101(53A).[1]  After considering the arguments of the parties, the Court hereby makes the following findings of fact and conclusions of law.

## BACKGROUND[2]

Since 2006, the Debtors have been employed as independent contractors of Centaurus Financial, Inc. ("Centaurus"), a licensed securities broker-dealer. Terri Fassi is a registered representative of Centaurus. Michael Fassi is the only branch manager at the Centaurus Fort Collins branch. He maintains Office of Supervisory Jurisdiction ("OSJ") status as a properly registered principal designated by Centaurus. In order to qualify for OSJ status, the supervisor must have previous experience in the securities broker-dealer industry, and must qualify by obtaining Financial Industry Regulatory Authority ("FINRA")

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[2] The Debtors, the standing Chapter 13 Trustee (the "Trustee") and creditors Marshall, Boyd and Company and Darryl S. Boyd (collectively, the "Creditors"), submitted Supplementary Stipulated Facts to this Court for consideration in connection with this limited issue, and stipulated to the admission of certain documentary evidence (Creditors' Exhibits 1 through 26 and Debtors' Exhibits 1 through 14). The Court also heard testimony from Mr. Fassi at the evidentiary hearing held May 6, 2013. The background facts set forth herein are supported by testimony and evidence presented at the hearing, stipulated facts and exhibits submitted by the parties, and the record in the Debtors' bankruptcy case.

Series 24 or Series 26 registrations. The Debtors are both registered as "brokers" through FINRA.[3]

At all times relevant hereto, the Debtors operated as "financial advisors"[4] for prospective clients. The Debtors solicit prospective clients, and meet clients at their business to discuss financial strategy and the sale of various financial products (the "Products"). All of the Products are approved for distribution and offered through Centaurus.

A prospective client, desiring to invest, completes a new client interview sheet, and determines whether to invest in Products. A client file is then created and maintained, and the file includes a client account agreement, order ticket(s), product application forms, investment explanation forms, and a copy of a client check. Client checks are routinely tendered to the Debtors in the ordinary course of business for the purchase of securities distributed by Centaurus. The Debtors forward the client checks, along with applicable purchase orders, to Centaurus no later than the next business day after receipt, in accordance with the Centaurus Branch Manager's Manual. No checks are made payable to the Debtors or any of their companies (*i.e.* Fassi Financial Network or C&T Asset Protection Group). No checks are deposited into the Debtors' accounts or any of their company accounts. At present, the Debtors maintain approximately five hundred client files subject to these procedures.

## DISCUSSION

Section 1325(a) "instructs a bankruptcy court to confirm a plan only if the court finds, *inter alia*, that the plan complies with the 'applicable provisions' of the Code."[5] Under § 1325(a)(1), the debtor bears the burden of proof by a preponderance of the evidence on all essential elements for confirmation, including the eligibility requirements under § 109(e).[6]

---

[3] Creditors' Exhibits 25 and 26.

[4] Debtors' Schedule I (Docket No. 17).

[5] *United States Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1381 (2010).

[6] *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 883 (9th Cir. BAP 2002); *see also In re Mozer*, 1 B.R. 350 (Bankr. D. Colo. 1979).

A.  **The Stockbroker Exception to Chapter 13 Eligibility**

Section 109(e) provides as follows:

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400, or an individual with regular income and such individual's spouse, **except a stockbroker** or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400 may be a debtor under chapter 13 of this title.[7]

This provision expressly excludes stockbrokers from eligibility as Chapter 13 debtors.

Pursuant to § 101(53A), a "stockbroker" is defined as follows:

(A) with respect to which there is a customer, as defined in section 741 of [title 11]; and

(B) that is engaged in the business of effecting transactions in securities-

(i) for the account of others; or
(ii) with members of the general public, from or for such person's own account.

"If [a debtor] is a stockbroker, then he may not file for relief under Chapter 13 of the Bankruptcy Code, but must proceed under the special stockbroker liquidation provisions of Subchapter III of Chapter 7 of the Bankruptcy Code."[8]

Thus, to establish the Debtors are not subject to the stockbroker exception to eligibility under Chapter 13, the Debtors must show either they do not have "customers," as defined by § 741(2), or they are not "engaged in the business of effecting transactions in securities."[9] Here, it is undisputed the Debtors are engaged in the business of effecting transactions in securities.

---

[7] § 109(e) (emphasis added).

[8] *In re Schave*, 91 B.R. 110, 111 (Bankr. D. Colo. 1988)

[9] *See id.*

Therefore, the issue of whether the Debtors are "stockbrokers" turns on whether the Debtors established by a preponderance of the evidence they do not have customers under § 741(2).

**B.     Whether the Debtors have "Customers."**

Section 741(2) defines "customer" as including the following:

(A) entity with whom a person deals as principal or agent and that has a claim against such person on account of a security received, acquired, or held by such person in the ordinary course of such person's business as a stockbroker, from or for the securities account or accounts of such entity—

> (i) for safekeeping;
> (ii) with a view to sale;
> (iii) to cover a consummated sale;
> (iv) pursuant to a purchase;
> (v) as collateral under a security agreement; or
> (vi) for the purpose of effecting registration of transfer; and

(B) entity that has a claim against a person arising out of—

> (i) a sale or conversion of a security received, acquired, or held as specified in subparagraph (A) of this paragraph; or
> (ii) a deposit of cash, a security, or other property with such person for the purpose of purchasing or selling a security[.][10]

---

[10] § 741(2). *See also In re Schave*, 91 B.R. at 112 observing the following:

This definition [of "customer"] closely follows the definition found in Section 16(2) of the Securities Investor Protection Act (SIPA). The conferring of customer status on a claimant allows preferential treatment of the claim under both the SIPA and Subchapter III of Chapter 7 of the Bankruptcy Code. The SIPA's enactment was in response to serious problems in the securities industry (H.R.Rep. No. 1613, 91st Cong. Sess. 2 (1970) U.S. Code Cong. & Admin. News p. 5254) and was designed to protect public customers in the event their broker-dealers encountered financial difficulties which prevented them from fulfilling their obligations to such public customers. *SIPC v. Barbour*, 421 U.S. 412, 414, 95 S.Ct. 1733, 1735, 44 L.Ed.2d 263 (1975). Subchapter III of Chapter 7 provides these special protections for customers of stockbrokers. Because these protections are so complex, they are not available to customers if a stockbroker were to file a Chapter 13 and this is why stockbrokers are ineligible to file a Chapter 13. . . .

The SIPA (and the analogous definition in 11 U.S.C. § 741(2)) assumes that the

The purpose for defining customers this way is to grant "preferred status in receiving distributions from the estate of a stockbroker."[11] Under both subsections of § 741(2), the definition of a customer expressly "requires that the customer have a claim against the stockbroker."[12]

In the instant matter, Mr. Fassi, whom this Court finds credible, testified during his thirty-seven year career in the financial services industry, not a single client ever filed or held a claim against him on account of his business. Further, only one client filed a claim against Terri Fassi, in April 2008.[13] However, the claim was denied and dismissed a week later.[14] The Debtors' Schedules do not list or indicate any claims held by clients in connection with their independent contract agreements with Centaurus. Therefore, the Court finds there is sufficient evidence that no persons hold any claims against the Debtors as required by § 741(2)(A) and (B).

Moreover, the Court finds the Debtors are agents of Centaurus, not agents of Centaurus customers under § 741(2)(A). The term "stockbroker" "does not encompass an employee who acts for a principal that 'effects' transactions or deals with the public, because such an employee will not have a 'customer.'"[15] With respect to Mr. Fassi, the Creditors and the Trustee urge the Court to consider the Centaurus Branch Manager's Manual as evidence Mr. Fassi is an agent of Centaurus customers. The manual provides in its concluding paragraphs "[p]erhaps the best advice that can be given to a registered representative is for him to remember that he is a customer's agent and

---

stockbroker holds customer "accounts", into which or through which the broker deposits or transfers cash, securities, or other property for the purpose of effecting a securities transaction. The accounts are held by the broker in the customer name.

[11] 4 COLLIER ON BANKRUPTCY 741.03[2] at 741-11 (16th ed. rev.) (citing § 752(a)).

[12] *In re Schave*, 91 B.R. at 112.

[13] Creditors' Exhibit 26, at MBC 343.

[14] *Id.*

[15] *In re Berry*, 22 B.R. 950, 952 (Bankr. N.D. Ohio 1982) (quoting the legislative history of 741(2) and stating "Although a person may effect transactions in securities, if that person is an employee, he cannot be a stockbroker as he can have no customers."); *see also Schave*, 91 B.R. at 112 (finding the debtor was an agent of the company and not of the customer).

working on the customer's behalf, and that his actions should be based on these premises."[16] This permissive language in the branch manager's manual, which does not even apply to Terri Fassi, is suggestive and not binding. However, the clear language in the Debtors' respective Independent Contractor's Agreements states "Contractor understands that he/she has no authority to act for any customer in any dealings in securities except as an agent of [Centaurus]."[17] Therefore, the Debtors are agents of Centaurus, not the customers represented in the client files.

In addition, the Creditors and the Trustee argued "other property" under § 741(2)(B)(ii) includes client checks made payable to third parties, but offered no supporting authority for this position. It is undisputed client checks are never made payable to the Debtors or their businesses, and no client checks are deposited in accounts held by the Debtors or their businesses.[18] The Debtors' only contact with checks is forwarding checks made payable to third parties to Centaurus within twenty-four hours after receipt. It is also undisputed the Debtors do not deposit any client property for the purpose of purchasing or selling a security.

Mr. Fassi's uncontoverted testimony and the Debtors' respective Independent Contractor's Agreements indicate the Centaurus accounts were managed by the Debtors, not deposited or held by the Debtors.[19] Client money reaches Centaurus for use in actual securities transactions, and the Debtors function as mere vessels to transport checks from the client's hands to Centaurus. Clients do not entrust money to the Debtors with the expectation **the Debtors** will purchase stock or trade securities, or provide the Debtors with "a reservoir of cash from which to purchase securities."[20] Thus, even if § 741(2)(B)(ii) was a stand-alone provision defining customers as suggested by the Creditors and the Trustee, the Debtors' clients are not "customers" under the terms of § 741(2)(B)(ii).

---

[16] Debtors' Exhibit 14, at 000013.

[17] Debtors' Exhibit 12, at ¶ 4.B.(4).

[18] Stipulated Facts (Docket No. 144), at ¶ 17-18.

[19] *See* Debtors' Exhibit 12.

[20] *Wider v. Wootton*, 907 F.2d 570, 572 (5th Cir. 1990).

In the absence of any "customers," the court determines the Debtors are not stockbrokers. The Debtors established by a preponderance of the evidence they do not have "customers" as defined under § 741(2). Accordingly, the Debtors are eligible to seek relief under Chapter 13 of the Bankruptcy Code.

## CONCLUSION

For the reasons stated above, the Court

FINDS the Debtors are not "stockbrokers" as that term is defined under 11 U.S.C. § 101(53A), and are eligible for Chapter 13 relief pursuant to 11 U.S.C. § 109(e).

THE COURT ORDERS the continued combined evidentiary hearing on confirmation of the Debtors' pending Chapter 13 plan and the Creditors' pending Motion to Dismiss is rescheduled for Monday, June 17, 2013 at 9:00 a.m. All other deadlines set forth in this Court's previous scheduling order (Docket No. 121) remain in full force and effect.

Dated May 21, 2013                    BY THE COURT:

                                      Michael E. Romero
                                      United States Bankruptcy Judge